**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 13 |
| | ) | |
| **CHET HARRIS,** | ) | **CASE NO. 16-99004-BEM** |
| | ) | |
| Debtor. | ) | |
| | ) | |
| **JEAN ST. JEAN,** | ) | |
| Movant, | ) | **CONTESTED MATTER** |
| | ) | |
| vs. | ) | |
| | ) | |
| **CHET HARRIS, Debtor** | ) | |
| and **MARY IDA TOWNSON, Trustee,** | ) | |
| | ) | |
| Respondents. | ) | |

## NOTICE OF HEARING

**PLEASE TAKE NOTICE** that **JEAN ST. JEAN** has filed a Motion for Relief from Stay and related papers with the Court seeking an Order Granting Relief from the Automatic Stay.

**PLEASE TAKE FURTHER NOTICE** that the Court will hold a hearing on the Motion for Relief from Stay in Courtroom 1402, United States Courthouse, 75 Ted Turner Drive, S.W., Atlanta, Georgia, at 9:30 A.M. on August 30, 2016.

Your rights may be affected by the court's ruling on these pleadings. You should read these pleadings carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.) If you do not want the court to grant the relief sought in these pleadings or if you want the court to consider your views, then you and/or your attorney must attend the hearing. You may also file a written response to the pleading with the Clerk at the address stated below, but you are not required to do so. If you file a written response, you must attach a certificate stating when, how and on whom (including addresses) you served the response. Mail or deliver your response so that it is received by the Clerk at least two business days before the hearing. The address of the Clerk's Office is Clerk, U. S. Bankruptcy Court, Suite 1340, 75 Ted Turner Drive, S.W., Atlanta Georgia 30303. You must also mail a copy of your response to the undersigned at the address stated below.

If a hearing on the motion for relief from the automatic stay cannot be held within thirty (30) days, Movant waives the requirement for holding a preliminary hearing within thirty days of filing the motion and agrees to a hearing on the earliest possible date. Movant

consents to the automatic stay remaining in effect until the Court orders otherwise.

Dated: August 8, 2016

Respectfully submitted,

/s/ Shannon D. Sneed
Shannon D. Sneed, Bar No. 665610
SHANNON D. SNEED & ASSOCIATES, P.C.
P.O. Box 1245
2112 Lee Street
Covington, Georgia 30015
(770) 788-0011 *Telephone*
(770) 788-1702*facsimile*
bankruptcy@sneedlaw.net
*Attorneys for JEAN ST. JEAN*

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE: ) | CHAPTER 7 |
| ) | |
| CHET HARRIS, ) | CASE NO. 16-99004-BEM |
| ) | |
| Debtor. ) | |
| ) | |
| JEAN ST. JEAN, ) | |
| Movant, ) | CONTESTED MATTER |
| ) | |
| vs. ) | |
| ) | |
| CHET HARRIS, Debtor ) | |
| and MARY IDA TOWNSON, Trustee, ) | |
| ) | |
| Respondents. ) | |
| ) | |

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY

COMES NOW Movant named above and shows this Court the following:

1.

This Motion is made pursuant to Section 362(d) of the Bankruptcy Code for relief from the automatic stay for all purposes allowed by law and the contract between the parties, including, but not limited to, the right to proceed with an eviction against the Debtor pursuant to his violation of a residential lease agreement between the parties.

2.

Movant is the owner of certain real property located at 1910 Heritage Drive, Conyers, GA 30094, which they leased to the Debtor on June 9, 2014. The lease expired on June 30, 2016, and has not been renewed. Respondent failed to vacate the property after the expiration of the lease. Movant failed to pay June rent, and has not paid any rent for July and August, 2016. Movant commenced a dispossessory action on

July 5, 2016 to recover the leased premises. A copy of the lease is attached hereto as Exhibit "A" and made a part hereof.

3.

Debtor filed the instant case on July 21, 2016. Debtor has defaulted on rental payments which have come due since the bankruptcy filing. Debtor's prepetition arrearage is $1580.00. Debtor's post-petition arrearage is $1100.00.

5.

Because of the Debtor's post-petition default on payment of rent, Movant is not adequately protected and should be permitted to proceed with the eviction process. Movant has suffered and continues to suffer irreparable harm because of the Debtor's default.

6.

Movant shows that the provisions of Bankruptcy Rule 4001(a)(3) should be waived.

**WHEREFORE,** Movant prays for an Order lifting the automatic stay, and authorizing them to proceed with the exercise of their right of eviction after default under the residential lease agreement and appropriate state statutes. Movant also prays that the provisions of Bankruptcy Rule 4001(a)(3) be waived, so that any Order entered will be enforceable immediately upon entry, for reasonable attorney's fees, and for such other and further relief as is just and equitable.

Dated:  August 8, 2016

Respectfully submitted,

/s/ Shannon D. Sneed
Shannon D. Sneed, Bar No. 665610
SHANNON D. SNEED & ASSOCIATES, P.C.
P.O. Box 1245
2112 Lee Street
Covington, Georgia 30015
(770) 788-0011 *Telephone*
(770) 788-1702*facsimile*
bankruptcy@sneedlaw.net
*Attorneys for JEAN ST. JEAN*

# Georgia Contract for the Lease
# Of Residential Real Property

This **Georgia Contract for the Lease of Residential Real Property** (the "Lease") is made on __06/09/14__, by and between _____**JEAN ST JEAN**_____, hereinafter called "Landlord" and _____**JOHNETTA & CHET HARRIS**_____, hereinafter called "Tenant," for the hereinafter described Property, and in consideration of the mutual promises contained herein. It is expressly understood and agreed that this Lease creates the relationship of Landlord and Tenant. This Lease is not intended to create an estate for years or transfer any ownership interest in the Property to Tenant.

### 1. PROPERTY LEASED
Landlord hereby Leases to Tenant and the latter lets from the former, premises including a residential dwelling located at: __1910 HERITAGE DR.__  __CONYERS__  __GA__  __30094__
or, if this box is checked, ☒ as described on the attached Legal Description Exhibit, incorporated herein by this reference, hereinafter called the "Property," to which Landlord claims title.

### 2. TERM OF LEASE
The initial term of the Lease shall be __24__ months, beginning on __07/01/14__ and ending on __06/30/16__.

### 3. RENEWAL OF LEASE
At the expiration of the Lease term, and unless otherwise terminated pursuant to the terms of this Lease, this Lease will be automatically renewed [check one] ☐ on a month to month basis, or ☒ for a term of __365__ days. At that time, the rental rate shall increase by __0__% of the most recent rental rate, or US$__0.00__ per month. All other terms of this Lease shall remain the same. If either the Landlord or the Tenant does not wish to renew this Lease at the end of the initial or extended Lease term, the party not wishing to renew shall notify the other party in writing of such intent not to renew, no less than thirty (30) days before the expiration of this Lease.

In the event the Lease has been terminated by either party and Tenant has not vacated the Property at the end of the term, Tenant may be deemed a tenant at sufferance and shall pay a hold over fee, which shall not be regarded as rent, in the amount of US$__100.00__ per day until the Property has been vacated.

### 4. DELIVERY OF POSSESSION BY LANDLORD
If the Property is not ready for occupancy at the beginning of the Lease term, this Lease shall nevertheless remain in effect, but the rent shall be abated proportionately until Landlord is able to deliver possession of the Property. If Landlord has not delivered possession within __Three__ (__3__) days after the commencement of this Lease, Tenant shall have the right to cancel this Lease by written notice delivered to Landlord or Property Manager, as hereinafter defined. Tenant's remedy shall be limited to such right of cancellation and the return of any rent or deposit prepaid to Landlord, and on such cancellation neither party shall have any further right against the other.

If Tenant takes occupancy of the Property prior to the beginning of the Lease term, such occupancy shall be subject to the terms of this Lease, and Tenant shall pay an additional prorated rental amount to Landlord for the period beginning on Tenant's actual date of occupancy and ending on the stated date of beginning of the Lease term.

Landlord shall timely satisfy all monetary obligations concerning the Property at all times to prevent the foreclosure of any liens or claims that could interfere with Tenant's possession of the Property, including, but not limited to the lien of any mortgage lender, tax authority and/or homeowner's or condominium association.

### 5. PROPERTY MANAGEMENT
From time to time, and at the Landlord's sole discretion, Landlord may engage the services of an agent or property manager ("Property Manager"), the terms of whose relationship with Landlord shall be set forth in a separate Property Management Agreement, to assist in the enforcement of Landlord's rights under this Lease, including, but not limited to the collection of rents, processing rental applications, assisting with repairs, holding security deposits, etc. Landlord shall provide Tenant with written notice, within no less than 5 banking days, of the engagement of any such Property Manager or of any change in the designated Property Manager.



The Property [check one]:
☐ IS currently managed by the Property Manager designated on the signature page of this Lease. The Property Manager, by signing this Lease, certifies that he/she/it is authorized to sign this Lease on behalf of the Landlord, and to enforce the terms of this Lease on behalf of Landlord; or

☒ IS NOT currently managed by a Property Manager.

## 6. RENT

Tenant agrees to tender to Landlord a monthly rental payment, without any deduction or set-off whatsoever, in the amount of US$ __950.00__ , payable in advance on the __One__ ( _1_ ) day of each month until the termination of this tenancy. The rental payments are payable to _____ __JEAN ST JEAN__ _____ at the following address: __82965  P.O.BOX__ _____ __CONYERS__    __GA    30094__

or to such other address as Landlord or the Property Manager may from time to time provide to Tenant by five (5) banking days' written notice.

If the Lease begins on any day of the month other than the payment date expressed in this section, the rent will be prorated until the next regularly scheduled payment date.

## 7. SECURITY DEPOSIT

**a) Deposit of Funds-** Tenant [check one] ☒ HAS, or ☐ HAS NOT paid a refundable security deposit as of the date of this Lease, and if not, then Tenant shall pay the refundable security deposit in the amount of US$ __950.00__ (the "Security Deposit") within _____ days of the execution of this Lease, which Security Deposit shall be deposited within five (5) banking days in the interest bearing or non-interest bearing account of [check one] ☒Landlord, or ☐ Other: _____
(the "Escrow Agent"). If deposited into an interest bearing account, the holder of the security deposit shall be entitled to retain any interest accrued. If the Escrow Agent is a Georgia real estate licensee, the Security Deposit shall be deposited into a trust account that is registered with the Georgia Real Estate Commission and is in compliance with the rules and regulations of the Georgia Real Estate Commission.

**b) Transfer of Funds-** Landlord shall have the right, after 10 banking days' written notice to Tenant and Escrow Agent, to transfer the Security Deposit to another holder and designate a new Escrow Agent. Tenant shall acknowledge the transfer by sending written notice of Tenant's consent to Landlord within 5 banking days of receiving Landlord's notice. If, however, Landlord is a Georgia real estate licensee, notice shall be given in accordance with Georgia Real Estate Commission Rule 520-1-.08.

**c) No Offset of Rental Payments** - Tenant shall not have the right to offset any rental payment or any other fee due under this Lease against the Security Deposit.

**d) Return of Funds-**The Security Deposit shall be returned to Tenant at the Tenant's last known mailing address via first class U.S. mail, postage prepaid, within thirty (30) days following the expiration of this Lease if all monies due Landlord have been paid, the Tenant has vacated the Property, and Tenant is not in default under the terms of this Lease. Landlord shall be entitled to withhold from the Security Deposit any sums still owed under this Lease, including, but not limited to, final rent payments, amounts owed for repairs (normal wear and tear excepted), amounts paid by Landlord to remove Tenant's personal property, delinquent utility bills paid on behalf of Tenant, or cleaning fees due to Tenant's failure to return the Property to Landlord in the same degree of cleanliness it was in when Tenant took occupancy of the Property (normal wear and tear excepted). The Security Deposit shall become the property of the Landlord ninety (90) days after the letter is mailed if the letter is returned as undeliverable, and if Landlord's reasonable attempts to locate the Tenant have failed.

**e) Liability of Escrow Agent-** It is agreed that the duties of Escrow Agent are herein specifically provided and are purely ministerial in nature, and that Escrow Agent, so long as Escrow Agent is acting in good faith, shall incur no liability whatsoever with respect to the Security Deposit except for willful misconduct or negligence. Landlord and Tenant do each hereby release Escrow Agent from any liability for any error of judgment or for any act done or omitted to be done by Escrow Agent in the good faith performance of its duties hereunder and do each hereby indemnify Escrow Agent against, and agree to hold, save, and defend Escrow Agent harmless from, any costs, liabilities, and expenses incurred by Escrow Agent in serving and faithfully discharging its duties and obligations hereunder.



In the event a dispute arises between the parties regarding the final disbursement of the Security Deposit, the Escrow Agent may, upon written notice to the parties:
  i. disburse the funds based upon a reasonable interpretation of this Lease; or
  ii. bring an appropriate action or proceeding in a court of competent jurisdiction for leave to deposit the Security Deposit, less the costs and expenses of the interpleader action actually incurred by Escrow Agent, including reasonable attorney fees. If Escrow Agent elects to interplead the Security Deposit, the Escrow Agent shall first give the parties ten (10) banking days' advance written notice.

## 8. OTHER CHARGES

In addition to any other rent, security deposit, utility fee or cost of repair herein described, Tenant shall be assessed a charge payable to Landlord within five (5) banking days of notice thereof in the following amounts and under the following circumstances:

  **a) Late Payment-** If any rent payment due hereunder is not received by Landlord within __Five__ ( 5 ) days of the date it is due, Tenant shall pay a late charge in an amount equal to ____% of the amount of such payment, or US$ __150.00__.

  **b) Dishonored Check-** If any check tendered by Tenant or on behalf of Tenant to Landlord or Property Manager is returned to Landlord or Property Manager for insufficient funds or any other reason, Tenant shall pay to the party to whom the check was tendered a service charge in the amount of US$ __100.00__. Landlord reserves the right to thereafter request that all future payments be made by money order or certified funds.

  **c) Re-keying-** Landlord may charge a re-key fee in the amount of US$ __100.00__ for the replacement of any keys during the term of the Lease or not returned to Landlord at the termination of this Lease.

  **d) Utility Re-connect Fee-** In the event Tenant fails to maintain any utility or service required hereunder through the end of the Lease term, Tenant shall pay Landlord the cost of reconnecting said utility, as well as a one time charge in the amount of US$ __100.00__.

  **e) Costs of Enforcement of Landlord's Rights-** Should any payment due hereunder not be paid within __10__ days of the date it is due, Landlord shall be entitled to take legal action to dispossess Tenant. Tenant shall be responsible for paying the court costs of such action, regardless of whether or not a court order is issued, or whether or not Tenant is allowed by Landlord to cure and reinstate by paying all amounts owed, unless the action is dismissed due to Landlord default hereunder. An additional administrative fee in the amount of US$ __300.00__ shall be payable by Tenant to Landlord to cover attorney fees and other administrative costs incurred by Landlord for each such dispossessory action filed.

  **f) Pet Fee-** Tenant agrees to pay a non-refundable pet fee in the amount of US$ __0.00__ if pets are allowed to occupy the Property. This fee shall be in addition to the cost of any damage caused by Tenant's pet and shall not be used to offset any charges for the repair of said damage.

## 9. EARLY TERMINATION

  **a) By Tenant-** Tenant [check one] ☐MAY ☒ MAY NOT terminate this Lease prior to the end of the Lease term.

  Provided the Landlord has consented to Tenant's right of early termination by so indicating hereinabove, Tenant may exercise that right by [check all that apply]:
  ☐ Providing Landlord with no less than _____ (__) days' prior written notice of Tenant's intent to terminate early, signed by all Tenants.
  ☐ Paying an early termination fee in an amount equal to _____ (__) month's rent.
  ☐ Paying an early termination fee in an amount equal to ___% of the total rent due through the end of the original lease term, or US$_____.

  All other terms of this Lease shall remain in full force and effect, including, but not limited to, Tenant's obligation to pay any rents or fees due through the date of Tenant's early termination of this Lease.




> *Exception for Members of the United States Military Service:* The terms of this section regarding early termination may not apply, and the provisions of the Service Members' Civil Relief Act of 2003, as amended, may control if Tenant provides Landlord with a copy of Tenant's official orders proving that Tenant has been called to active duty with the United States Armed Services during the term of this Lease; or, Tenant is on active duty with the United States military and Tenant or an immediate family member of Tenant occupying Property has received, during the term of this Lease, permanent change of station orders or temporary duty orders for a period not less than 90 days.

b) **By Landlord-** Landlord may terminate this Lease prior to the end of the Lease term by:
   i. Providing Tenant with no less than sixty (60) days prior written notice of Landlord's intent to terminate the Lease early; and
   ii. Provided Tenant has paid all rents and fees due under this Lease at time of Lease termination and is otherwise not in default under this Lease, paying Tenant an early termination fee in the amount of US$ __950.00__, which shall be paid to Tenant within thirty (30) days after the early expiration of this Lease. Tenant hereby acknowledges that this early termination fee shall serve as full liquidated damages for any damages Tenant may suffer due to Landlord's early termination of this Lease.

All other terms of this Lease shall remain in full force and effect, including, but not limited to, Tenant's obligation to pay any rents or fees due through the date of Landlord's early termination of this Lease.

## 10. USE OF PROPERTY

a) **People-** The Tenant agrees to use the Property as a residential dwelling and for no other purpose. The Tenant agrees to abide by the covenants, agreements, rules and regulations of this Lease, as well as all posted rules and regulations regarding the use of any recreational facilities, common areas, streets, driveways or sidewalks on the Property. It is the responsibility of the Tenant to familiarize himself with and abide by all federal, state, county and local laws, regulations and ordinances, and the rules, regulations and by-laws of any homeowners association or condominium association governing the use of the Property. It is understood that, in addition to the Tenant, ONLY the following people may occupy the rented Property:
**JOHNETTA HARRIS, CHET HARRIS AND THEIR CHILDREN**

Tenant agrees not to do or to permit any act or practice injurious to the Property, or which may be otherwise prohibited by law.

b) **Pets-** Pets [check one] ☐ are or ☒ are NOT allowed under this Lease.
Provided Landlord has consented to pets to occupying the Property by so indicating hereinabove, this consent is limited by the following:
   i. Only _____ (____) individual pet(s) is (are) allowed on the Property and are specifically described as follows:

| __N/A__ | / __0.00__ | __N/A__ | / __0.00__ |
|---|---|---|---|
| breed | /max. predicted weight | breed | /max. predicted weight |
| __N/A__ | / __0.00__ | __N/A__ | / __0.00__ |
| breed | /max. predicted weight | breed | /max. predicted weight |

   ii. Tenant shall, at all times, abide by all applicable local laws, the requirements of Landlord's insurance carrier and association rules and regulations with respect to the keeping of animals or pets, including, but not limited to, leash laws, licensing laws, and laws regarding vaccinations and inoculations. Tenant shall, upon request and within five (5) banking days' notice, provide Landlord with proof of any current vaccinations applicable to the pet's species which are required by local law, including, but not limited to, rabies vaccinations.
   iii. Tenant shall keep pet confined or on a leash when out of doors. Tenant is responsible for all acts of pet or injuries caused by Tenant having a pet on the Property, including, but not limited to, proper clean up and disposal of pet droppings; flea, tick or other pet related pest infestation within the dwelling;



damage to the Property indoors and/or out of doors; and public disturbance or nuisance created by Tenant's pet.

iv. If, in the sole discretion of Landlord or Property Manager, Tenant's pet becomes an annoyance to the public, then Landlord or Property Manager may, with five (5) days written notice to Tenant, demand the removal of the pet from the Property. If, in the sole discretion of Landlord or Property Manager, Tenant's pet becomes a threat to public health or safety, then Landlord or Property Manager may demand the removal of the pet from the Property immediately.

## 11. CONDITION OF PROPERTY

Tenant shall, at all times, maintain the Property in a clean and orderly condition so as not to create waste of or damage to the Property, and shall return the Property to the Landlord in the same condition at the end of the Lease term as it was in at the beginning of the Lease term, normal wear and tear excepted.

**a) Initial Inspection of the Property-** Prior to commencement of this Lease and Tenant's occupancy of the Property, Landlord and Tenant shall each, separately or together, conduct an initial walk-through of the Property and complete the attached Rental Property Condition Report. It shall be the responsibility of the Tenant to note any damage to the Property observed during said walk-through if not already indicated on the report by Landlord, and Tenant expressly acknowledges that failure to do so may create liability on the part of the Tenant for any Property damage noted at the end of the Lease term. By taking possession of the Property, Tenant acknowledges that the Property has been received in clean condition and in good order with the exception of any matters noted in the Rental Property Condition Report. Except as otherwise indicated in this Lease, Tenant shall take possession of the Property "as is," and has not relied upon any promise or representation by Landlord to repair, improve or otherwise alter the Property.

**b) Landlord Responsibility for Repairs-** It is the Tenant's responsibility to notify Landlord of any condition or defect which would render the Property unsafe or unfit for use as a residential dwelling, or which, if left unrepaired, could lead to severe damage to the Property. Such conditions shall include, but are not limited to, nonfunctioning smoke detectors, rodent or termite infestation, roof or plumbing leaks, and severe erosion. Landlord shall, within a reasonable amount of time after receiving notice from Tenant, repair any defect which would create a safety or health hazard to the occupants of the Property, would render the Property untenable, or is required under federal, state or local law. Landlord shall not be responsible for any routine maintenance of the Property, except as otherwise indicated herein.

**c) Tenant's Maintenance Responsibilities-** Tenant agrees to be responsible for, and to make, at Tenant's expense, all routine maintenance of the Property. Tenant's maintenance responsibilities shall include, but not be limited to the following:

i. Unless other indicated herein, and except for Property separately maintained by a condominium or homeowner's association, all yard maintenance is the responsibility of the Tenant, and the grounds shall be kept neatly mowed and free of debris.

ii. It is specifically understood that Tenant will, at Tenant's expense, keep sinks, lavatories, and commodes in good working order, reporting any initial malfunction within five (5) days of occupancy.

iii. Tenant shall replace all broken windows and burned-out light bulbs, repairing any damage to screens, interior walls and doors.

iv. Tenant shall be responsible for taking reasonable precautions in extreme cold weather to protect the pipes from freezing.

v. Tenant agrees to report to Landlord any malfunction of, or damage to, electrical, plumbing, heating or air conditioning systems. Tenant is responsible for changing air filters in heating and air conditioning systems every __12__ months and reporting any water leaks immediately. Prior to reporting any herein described malfunction, however, the Tenant shall take reasonable steps to confirm that the malfunction is not due to a tripped circuit breaker or blown fuse. Failure to do so may result in a charge to Tenant in the amount of US$ __100.00__ for the service call.

vi. Tenant agrees to pay for the cost of all repairs made necessary by negligent or careless use of the Property, including repairs to electrical, plumbing, heating and cooling system, as well as floor coverings, wall coverings and appliances.

vii. Tenant agrees to take reasonable precautions to prevent losses resulting from theft, malicious mischief, or vandalism.



d) **Final Inspection of the Property-** Within five (5) days after the Tenant ceases to occupy the Property (or within a reasonable time, if Tenant vacates the Property without notifying the Landlord), Landlord shall furnish Tenant with a copy of the completed Rental Property Condition Report, indicating any damage to the Property not noted at the initial inspection of the Property for which Tenant shall be held responsible. Tenant shall have the right to inspect the Property within three (3) banking days of receipt of the completed Rental Property Condition Report to confirm or dispute Landlord's assessment of the Property's condition. In the event Tenant disputes the accuracy of Landlord's Rental Property Condition Report, Tenant shall have five (5) banking days from the receipt of the Rental Property Condition Report to notify the Landlord in writing of which specific items Tenant disputes. All notices delivered as a result of this section shall be delivered in a manner consistent with the section of this Lease entitled "Notices."

## 12. RIGHT OF ENTRY

Tenant agrees that Landlord may enter the Property during reasonable hours for the purpose of inspecting the Property and Tenant's compliance with the terms of this Lease, making repairs, alterations, improvements or additions as Landlord may deem appropriate and showing the Property to prospective purchasers or tenants. Landlord will give Tenant twenty four (24) hours' advance notice before entering Property, except for in the event of an emergency. Landlord shall have the right to display "For Sale" or "For Rent" signs upon the Property within the last __Thirty__ ( 30 ) days of the Lease term, and to market the Property for sale or for lease throughout the entire Lease term. Within the last __Thirty__ ( 30 ) days of the Lease term, Landlord [check one] ☐shall or ☒shall NOT have the right to place a lock box on the Property, during which time Tenant shall continue to be solely responsible for securing Tenant's valuables. Tenant shall cooperate with Landlord to make the Property available to prospective purchasers and tenants during reasonable hours.

## 13. ALTERATIONS TO THE PROPERTY

Tenant may not make any alterations or additions to the Property without the prior written consent of Landlord. Tenant is forbidden from changing, adding or removing any locks without prior written consent of Landlord. Tenant shall not paint, mark or otherwise deface walls, ceilings, floors, windows, cabinets, woodwork, stone, ironwork, or any other part of the Property, inside or out. Tenant specifically agrees not to damage the walls with screws, nails, glue or tape, though standard picture hooks and curtain or shade brackets shall be allowed. Any alterations or improvements made by Tenant, including fixtures, carpeting, painting, wallpaper, and landscaping, shall become a part of the Property unless otherwise consented to by Landlord in writing. Upon termination of this lease Tenant shall restore the property to its original condition, safety and appearance, ordinary wear and tear excepted, except as to the fixtures, carpeting, painting, wallpaper, shrubs or any other plants which Landlord has accepted. If Tenant fails to do so, Tenant will promptly reimburse Landlord for any expenses required to restore the Property.

## 14. DAMAGE TO THE PROPERTY NOT CAUSED BY TENANT

If the Property is damaged by fire, flood, toxic environmental hazard, extreme weather or other casualty not due to the negligence of Tenant, Tenant's invitees, licensees or guests, Landlord shall repair the damage within a reasonable time and rent shall continue unabated unless the casualty renders the Property fully untenable, in which case either party may terminate this Lease and Tenant, on payment of all rent due through the date Property is surrendered, shall not be liable for any further rent but shall be reimbursed the Security Deposit. In the event the Property is rendered only partially untenable by the above described casualty, Tenant shall be entitled to a reduction in the amount of rent proportionate to the amount of Property so damaged until such time as Property has been repaired; provided, however, that this shall not relieve the Landlord of the obligation to complete repairs within a reasonable time.

This Property [check one] ☐ has or ☒ has NOT been flooded by natural forces, such as excessive rain or an overflow of an established water source, within the five (5) years preceding the date of this Lease. The term "flood" as used in this paragraph shall mean the inundation of water over land or structures not usually covered by it, and shall not include water intrusion caused by a failure of plumbing.

This Property [check one] ☒ was or ☐ was NOT built prior to 1978. If the Property or any part thereof was built prior to 1978, Tenant acknowledges receipt of the Lead Based Paint Exhibit attached hereto and by this reference made a part hereof and the EPA brochure entitled "Protect Your Family From Lead In Your Home."



Tenant acknowledges that it is Tenant's responsibility to insure Tenant's personal property through a comprehensive policy of renter's hazard insurance. Neither Landlord, nor Property Manager nor Broker shall be liable to Tenant or any party claiming by, through or under Tenant for any damage to personal property stored on the Property, and Tenant does hereby indemnify Landlord, Property Manager and Broker against, and agrees to hold, save, and defend Landlord, Property Manager and Broker harmless from, any costs, liabilities, and expenses incurred as a result of damage to personal property stored on the Property.

### 15. UTILITIES AND SERVICES
Tenant understands and agrees that the cost of utilities and services shall be paid as follows: [check all that apply]

| Utility or Service | Paid by Tenant | Paid by Landlord | Optional or Not Required |
|---|---|---|---|
| Electricity | X | | |
| Gas | X | | |
| Water | X | | |
| Sewer | | X | |
| Waste removal | X | | |
| Telephone | X | | |
| Yard and Lawn Maintenance | X | | |
| Cable | X | | |
| Pest (other than termite or rodents) Control | X | | |
| Other: | | | |
| Other: | | | |

Any utilities or services required to be maintained by Tenant must be transferred or connected in Tenant's name within ___Three___ ( 3 ) days of commencement of this Lease.

### 16. USE OF PARKING
Tenant shall park motor vehicles in areas designated by Landlord and no other areas. Any vehicle parked on the Property shall bear evidence of current license and registration, and no recreational vehicle, boat, motor home, trailer or inoperable vehicle of any kind shall be permitted to be parked on the Property. Any vehicle not in compliance with this section may be towed at Tenant's expense.

### 17. ADDITIONAL USE RESTRICTIONS
The following rules apply to Tenant and Tenant's invitees, guests and licensees:
    a) Tenant shall not operate heavy equipment, play loud music or create any other condition which may constitute a nuisance or disrupt the quiet enjoyment of neighbors in the surrounding area.
    b) Tenant shall not make use of portable heaters or air conditioning units without the written permission of Landlord.
    c) Tenant will neither store nor dump any environmentally hazardous or combustible substances on the Property, except that Tenant may store normal household goods in amounts necessary for normal household use.
    d) The possession of any illegal substance, stolen goods or other contraband on the Property is strictly forbidden.

### 18. SUBORDINATION
This Lease is subject and subordinate to the lien of all mortgages now or at any time hereafter placed on any part of Landlord's property which includes the Property, to extensions or renewals thereof, and to all advances now or hereafter made on the security thereof. Tenant agrees, upon request, to execute such further instruments evidencing such subordination as Landlord may request, and if Tenant fails to do so, Landlord is empowered to do so in the name of the Tenant.



Page 7 of 12
Form RE120, *Georgia Contract for the Lease of Residential Real Property*
Copyright© 2012 by Orthrus Real Estate Enterprises, LLC. All rights reserved.      Initials: ___ ___ ___ ___
R07022012



## 19. LIMITATION OF LANDLORD'S LIABILITY

The term "Landlord," as used in this Lease, so far as covenants or obligations on the part of Landlord are concerned, shall be limited to mean and include only the Landlord or Landlords, who, at the time in question, own the Property. In the event of any transfer or transfers of ownership of the Property, the Landlord herein named (and in case of any subsequent transfers or conveyances, the then Landlord) shall be, from and after the date of such transfers and conveyances, freed and relieved of all liability with respect to the performance of any covenants or obligations on the part of Landlord contained in this Lease to be performed after the transfer. Without further agreement, the new owner of the Property shall be deemed to have assumed and agreed to observe and perform any and all obligations in this Lease. Landlord may transfer his interest in the Property without the consent of Tenant and such transfer or subsequent transfer shall not be deemed a violation on Landlord's part of any of the terms and conditions of this Lease. Landlord or transferor shall remain and continue to be liable for any performance or payment which shall have accrued or become owing during such Landlord's or transferor's tenure as Landlord hereunder.

## 20. INDEMNIFICATION OF LANDLORD

The Tenant shall not do or permit any act upon the Property which may subject the Landlord to any liability by reason of any illegal business or conduct upon the Property, or by reason of any violation of law or of any legal requirement of public authority, but shall exercise such control over the Property as to fully protect the Landlord. Notwithstanding that joint or concurrent liability may be imposed upon the Landlord by statute, ordinance, rule, regulations, or order, the Tenant shall indemnify the Landlord against any liability or expense of any nature due to the following:

a) Any breach of any covenant in this Lease required to be performed by the Tenant;

b) Any damage to person or property occasioned by the Tenant's use and occupancy of the Property or by any use or occupancy of the Property which the Tenant may permit its guests, invitees and/or licensees; and

c) Injury to any person, including death resulting at any time therefrom, occurring in or about the Property and on the sidewalks adjacent to the Property. If the Tenant is required to defend any action or proceeding pursuant to any such occurrence to which the Landlord is made a party, the Landlord shall be entitled to appear, defend, or otherwise take part in the matter involved, at its election, by counsel of its own choosing, providing such action by the Landlord does not limit or make void any liability of any insurer of the Landlord or Tenant hereunder in respect to the claim or matter in question. The Tenant's liability under this section shall be reduced by the net proceeds collected from any insurance taken out by the Tenant to cover losses from the events herein described.

## 21. DEFAULT

A party shall be in default if he or she breaches any term of this Lease. Except as otherwise stated herein, neither Landlord nor Tenant shall be deemed to be in default hereunder, however, until and unless such party has been given written notice of its failure to comply with the terms of this Lease and thereafter does not cure such failure within three (3) banking days after receipt of such notice.

a) **Tenant's Default-** Tenant's default under any of the terms of this Lease may result in Landlord's termination of this Lease, together with Landlord's exercise of all rights and remedies available under the law, including, but not limited to, dispossessory actions, Tenant's forfeiture of security deposits and law suits for damages. Tenant covenants that Tenant has adequate financial resources to lease the Property. Tenant does not contemplate the filing of any bankruptcy, reorganization, arrangement, insolvency or liquidation proceedings, or any other proceeding for the relief of debtors in general, and Tenant acknowledges that Tenant's filing of a bankruptcy petition shall constitute an additional event of default hereunder, at which time this Lease shall immediately and automatically terminate with no right to cure.

b) **Landlord's Default-** If the Landlord should default on any of the provisions of this Lease, due to no fault of the Tenant, then Tenant shall be entitled, as Tenant's sole and exclusive remedy, to terminate this Lease, be reimbursed for Tenant's initial Security Deposit, and be paid a fee equal to the early termination fee (if any) described in Section 9(b)ii herein as full liquidated damages.

c) **Waiver-** All rights accorded to Landlord by this Lease shall be cumulative and in addition to any laws which currently exist or may exist in the future. Any failure by Landlord to exercise any rights under this Lease shall not act as waiver of those or any other rights, and shall not act as a bar to Landlord's future enforcement of those rights. No statement or promise by Landlord as to tenancy, repairs, and amount of rent



to be paid, or any other terms shall be binding unless it is put in a writing signed by Landlord and made a specific part of this Lease.

## 22. BROKERAGE

By signing below, all parties represented by a Broker acknowledge that no Broker in this transaction shall owe any duty to Tenant or Landlord greater than what is set forth in their brokerage engagements and the Brokerage Relationships in Real Estate Transactions Act, O.C.G.A. § 10-6A-1 et. seq and further:

**a)** Landlord and Tenant each hereby represents and warrants to the other that he/she/they have not dealt with any real estate Broker, agent or salesperson (other than Property Manager, Landlord's Broker or Tenant's Broker, as hereinafter defined) so as to create any legal right or claim in any such Broker, agent or salesperson for a rental commission or similar fee or compensation with respect to the negotiation and/or consummation of this Lease. Tenant and Landlord acknowledge that they are not represented by a Broker unless they have signed a brokerage agreement with said Broker. If any party hereto is not represented by a Broker, that party acknowledges full responsibility for protecting his/ her/their own interests.

**b)** Any commission or other compensation due to a Broker shall be paid according to the terms of a separate agreement between Broker and Tenant, Broker and Landlord, or both.

**c)** Landlord and Tenant have been advised and expressly acknowledge their obligation to conduct a thorough investigation, or to obtain independent professional advice, with respect to any concerns they may have regarding the condition of the Property and the surrounding neighborhood, including, but not limited to, any structural, safety, environmental, financial, tax, legal or health concerns, or issues regarding the surrounding community, future or current real estate development, or municipal services offered to local residents. Tenant and Landlord expressly acknowledge that Broker is not an expert in any of these areas and has given no advice nor made any representations in regard thereto upon which Tenant or Landlord have relied. All parties hereby release any Broker and any affiliated agent and employee from any cost, expense or liability that may result from their reliance on any perceived advice given with respect to the foregoing.

**d) Material Relationships-** Neither the Broker nor Broker's affiliated licensees have a material relationship with Landlord or Tenant except as follows: **LANDLORD IS A GA   REAL ESTATE AGENT**

**e) Tenant's Broker-** The Tenant's Broker identified on the signature page of this Lease is the Broker assisting the Tenant, regardless of whether the Tenant is a customer or a client as defined under Georgia law. It includes the agent or agents of the Broker who are involved in this particular transaction. The Tenant's Broker is [check one]:

  i. ☐ representing the Tenant as a client under a written brokerage agreement; or
  ii. ☒ representing the Tenant as a customer, performing only ministerial acts; or
  iii. ☐ acting as a dual agent, with responsibilities to both Landlord and Tenant, as described more fully below; or
  iv. ☐ acting as a designated agent, with responsibilities to both Landlord and Tenant, as described more fully below.

**f) Landlord's Broker-** The Landlord's Broker identified on the signature page of this Lease shall refer collectively to all persons assisting the Landlord, regardless of whether the Landlord is a customer or client as defined under Georgia law. It includes the agent or agents of the Broker who are involved in this particular transaction. The Landlord's Broker is NOT the Property Manager unless Landlord's Broker has also signed as Property Manager. The Landlord's Broker is [check one]:

  i. ☐ representing the Landlord as a client under a written brokerage agreement; or
  ii. ☐ representing the Landlord as a customer, performing only ministerial acts; or
  iii. ☒ acting as a dual agent, with responsibilities to both Landlord and Tenant, as described more fully below; or
  iv. ☐ acting as a designated agent, with responsibilities to both Landlord and Tenant, as described more fully below.

**g) Dual Agent-** "Dual agent" means a Broker who simultaneously has a client relationship with both landlord and tenant in the same real estate transaction. O.C.G.A. §10-6A-3(10). By checking the dual agent box above, the parties acknowledge that they have consented to a dual agency and acknowledge that their interests may sometimes be adverse. If the parties have agreed to allow a Broker to act as a dual agent, that



Broker will not disclose to another party any information a client has asked the Broker to keep confidential, or which would negatively affect that party's bargaining position, unless the disclosure is required by law.

**h)** **Designated Agent-** "Designated agent" means one or more licensees affiliated with a Broker who are assigned by the Broker to represent solely one client to the exclusion of all other clients in the same transaction and to the exclusion of all other licensees affiliated with the Broker. O.C.G.A. §10-6A-3(9). By checking the designated agent box above, the parties acknowledge that they have consented to a designated agency and acknowledge that _____ will work exclusively with Tenant as Tenant's designated agent and

_____ will work exclusively with the Landlord as Landlord's designated agent.

**i)** Landlord [check one] ☒ IS or ☐ IS NOT a Georgia real estate licensee.

## 23. ASSIGNMENT/SUBLEASE

The Tenant covenants not to assign or sublet the Property without permission of the Landlord. No additional occupants other than those noted above are allowed without Landlord's express written permission.

## 24. NOTICES

Any notice, request or other communication required or permitted to be given hereunder shall be in writing and shall be delivered by hand or overnight courier (such as United Parcel Service or Federal Express), sent by facsimile, sent by electronic mail ("email") or mailed by United States registered or certified mail, return receipt requested, postage prepaid and addressed to each party at its address as set forth below. Any such notice shall be considered given on the date of such hand or courier delivery, confirmed facsimile transmission, deposit with such overnight courier for next business day delivery, or deposit in the United States mail, but the time period (if any is provided herein) in which to respond to such notice shall commence on the date of hand or overnight courier delivery or on the date received following deposit in the United States mail as provided above. Rejection or other refusal to accept or inability to deliver because of changed address of which no notice was given shall be deemed to be receipt of the notice. By giving at least five (5) banking days' prior written notice thereof, any party may from time to time and at any time change its mailing address hereunder. Any notice of any party may be given by or to such party's counsel or Broker. The parties' respective mailing and email addresses for notice purposes are indicated after the parties' signatures below. Telephone numbers are given for convenience of reference only. Notice by telephone shall not be effective.

## 25. MISCELLANEOUS PROVISIONS

The Tenant and Landlord covenant and agree with each other that:

**a)** The provisions of this Lease shall extend to and be binding on the respective heirs, executors, administrators and successors of each party hereto;

**b)** If any provision of this Lease is determined by a court of competent jurisdiction to be invalid or unenforceable, the remainder of this Lease shall nonetheless remain in full force and effect;

**c)** Time is of the essence of this Lease;

**d)** The section headings appearing in this Lease are for convenience of reference only and are not intended, to any extent and for any purpose, to limit or define the text of any section or any subsection hereof;

**e)** This Lease, including any Exhibits attached hereto, contain the entire agreement between the parties pertaining to the subject matter hereof and fully supersede all prior written or oral agreements and understandings between the parties pertaining to such subject matter;

**f)** Tenant waives all rights of homestead exemption in the Property;

**g)** This Lease shall be governed by and interpreted under the laws of the State of Georgia;

**h)** **Definitions:**

    **i.** **Banking Days**: Monday through Friday, excluding federal holidays;

    **ii.** **Broker**: "Broker" means any individual or entity issued a broker's real estate license by the Georgia Real Estate Commission pursuant to O.C.G.A. § 43-40. The term "Broker" includes the Broker's affiliated licensees except where the context would otherwise indicate;

    **iii.** **Inspection**: Includes any and all inspections regardless of whether by the Tenant individually or by a licensed (where required by law) or other third party inspector selected by Tenant;



iv. **Landlord**: The term "Landlord" used herein shall refer collectively to all persons named above and signing this Lease as Landlord, and their successors and/or assigns if property shall be sold. Any acts to be performed by the Landlord may be performed by the Property Manager or employees of the Landlord or Property Manager;

v. **Tenant:** The term "Tenant" used herein shall refer collectively to all persons named above and signing this Lease as Tenant, and the liability of each such person shall be joint and several. Notice given by Landlord to any person named as Tenant, or by any such person to Landlord, shall bind all persons signing this Lease as Tenant;

## 26. EXHIBITS

The followings exhibits are attached hereto and are by this reference made a part hereof:

☒ Rental Property Condition Report
☐ Legal Description Exhibit
☐ Lead Based Paint Exhibit
☐ EPA brochure "*Protect Your Family from Lead in Your Home*"
☐ Other: _____
☐ Other: _____
☐ Other: _____

## 27. SPECIAL STIPULATIONS:
PLEASE NOTE THAT:

IT IS AGREED BETWEEN TENANTS AND LANDLORD THAT TENANTS WILL BE RESPONSIBLE TO MAINTAIN A CLEAN YARD FREE OF ALL DEBRIS. TENANTS ARE RESPONSIBLE TO CUT THE GRASS AND MAINTAIN THE YARD.

IN THE EVENT THAT TENANTS ARE NOT MAINTAINING THE YARD AND CUTTING THE GRASS AS AGREED, THE LANDLORD SHALL HAVE THE RIGHT TO CUT THE GRASS AND CHARGE THE TENANTS FOR A FEES OF $100.00 PER CUT.

TENANTS MAY DEPOSIT THE MONTHLY RENT PAYMENT TO THE LANDLORD BANK ACCOUNT, THIS ACCOUNT NUMBER WILL BE GIVEN TO TENANTS UPON REQUESTED.

**[SIGNATURE PAGE FOLLOWS]**



The *Lease* is hereby *Accepted*, with notice being properly given to the party making the last offer, at __6__ o'clock **PM** m. ___06/09/14___.

All Names should be both signed and printed.

Tenant: *Johnetta Harris*

__JOHNETTA HARRIS__
Tenant Printed Name

*Chet Harris*

__CHET HARRIS__
Tenant Printed Name

__678.596.5112__ / _____
Tenant Phone Number   Tenant Fax Number

__678.206.4242__
Tenant Email Address

__1910   HERITAGE DR.__
Tenant Address

__CONYERS__   __GA__   __30094__
Tenant City   State   Zip

[Check one] ☒Landlord or ☐Property Manager:

__JEAN ST JEAN__
Landlord or Property Manager Printed Name

_____
Landlord or Property Manager Printed Name

_____ / _____
Landlord or Property Mgr Phone   Landlord or Property Mgr Fax

_____
Landlord or Property Manager Email Address

__82965   P.O. BOX__
Landlord or Property Manager Address

__CONYERS__   __GA__   __30094__
Landlord or Property Manager City   State   Zip

### Tenant's Broker:

_____ / _____
Name of Brokerage Firm   Broker Code

_____ / _____
Brokerage Phone Number   Brokerage Fax Number

_____

_____
Agent Printed Name

_____ / _____
Agent Phone Number   Agent Fax Number

_____
Agent Email Address

Required License Number(s):

_____ / _____
Broker's License Number   Agent's License Number

### Landlord's Broker:

__LEE STAPLES REALTY, INC.__ / _____
Name of Brokerage Firm   Broker Code

__770-483-7779__ / __770-929-0498__
Brokerage Phone Number   Brokerage Fax Number

_____

__Jean C St. Jean__
Agent Printed Name

__(404) 723-1074__ / _____
Agent Phone Number   Agent Fax Number

__jeanstjean@gmail.com__
Agent Email Address

Required License Number(s):

__LSTA__ / __STJEANJEANC__
Broker's License Number   Agent's License Number

Page 12 of 12
Form RE120, *Georgia Contract for the Lease of Residential Real Property*
Copyright© 2012 by Orthrus Real Estate Enterprises, LLC. All rights reserved.   Initials: _____  _____  _____  _____
R07022012



## **Certificate of Service**

I certify that I am over the age of 18 and that on the date written below a copy of the foregoing Motion for Relief from the Automatic Stay and Notice of Hearing was served by email or by first class U.S. Mail, with adequate postage prepaid on the following persons or entities at the addresses stated:

The following parties have been served via U.S. Mail:

Chet Harris
1910 Heritage Drive
Conyers, GA 30094

Mary Ida Townson
Standing Chapter 13 Trustee
Suite 2200
191 Peachtree St. NW
Atlanta, GA 30303


Dated:  August 8, 2016


/s/ Shannon D. Sneed
Shannon D. Sneed, Bar No. 665610
SHANNON D. SNEED & ASSOCIATES, P.C.
P.O. Box 1245
2112 Lee Street
Covington, Georgia 30015
(770) 788-0011 *Telephone*
(770) 788-1702*facsimile*
bankruptcy@sneedlaw.net
*Attorneys for JEAN ST. JEAN*